**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

PAMELA J. FRAUENDIENST                              Civil No. 07-3854 (JRT/FLN)

        Plaintiff,

v.                                                  **REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE
Commissioner of Social Security,

        Defendant.

---

Fay Fishman, Esq., 3009 Holmes Avenue South, Minneapolis, MN 55408, on behalf of Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, on behalf of Defendant.

---

Plaintiff Pamela Frauendienst ("Ms. Frauendienst") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her application for disability insurance benefits. See, 42 U.S.C. § 1382 (c). This Court has appellate jurisdiction over the claim pursuant to 42 U.S.C. § 405 (g). This matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The parties have submitted cross-motions for summary judgment. [Dockets # 9 and # 16]. For the reasons set forth below, this Court recommends that Defendant's motion for summary judgment [Docket # 16] be granted and the Commissioner's decision be affirmed.

## I. INTRODUCTION

Ms. Frauendienst applied for a period of disability and disability insurance benefits on August 30, 2004. (Tr. at 59.) She is alleging disability beginning August 23, 2004. (Tr. at 14.).

The application was initially denied on March 3, 2005 and upon reconsideration on May 23, 2005. (Tr. at 49; 44.) She appeared before Administrative Law Judge ("ALJ") David Washington on November 22, 2006. Dr. Andrew Steiner appeared as an impartial medical expert and Norman Mastbaum appeared as an impartial vocational expert. On February 14, 2007, the ALJ issued an unfavorable opinion against Ms. Frauendienst. (Tr. at 11-27.)

She filed for review on February 20, 2007. (Tr. at 10.) On August 1, 2007, her appeal was denied by the Social Security Appeals Council. (Tr. at 6-8.) The denial of review made the ALJ's findings the final decision of the defendant.  42 U.S.C. §405(g); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); 20 C.F.R. § 404.981. Ms. Frauendienst initiated review of this action on August 29, 2007 [Docket #1]. The appeal to this court was brought pursuant to 42 U.S.C. §405 and §423. She filed her Motion for Summary Judgment on January 11, 2008 [Docket # 9].  The Commissioner filed its Motion for Summary Judgment on March 10, 2008 . [Docket # 16].

## II.  STATEMENT OF FACTS

1.     Plaintiff's Background

Ms. Frauendienst was born on February 16, 1958 and was 48 at her hearing. (Tr. at 59.) She has a high school education. (Tr. at 177.) She has worked in the past as a home health aide and as a waitress. (Tr. at 124.) She filed for disability based on chronic fatigue syndrome, depression and anxiety.

2.     Medical Evidence

Ms. Frauendienst's alleged onset date is August 24, 2004. Prior to that date, she underwent medical care including sleep studies, specialist evaluations and surgery to improve her sleep. (Tr. at 369, 376.)

On August 24, 2004, she told Dr. Myers that she had overwhelming fatigue. She had a lack of energy and her medication interfered with her ability to sleep. She did not want to move out of her chair and often felt that she could not get up. She was taking 3-4 doses of Lexapro[1] per week. She reported that her thyroid medication had side effects. She was told to stay off work for a month of rest. Her medications were stopped for ineffectiveness and lab tests were ordered. (Tr. at 326.) She returned to Dr. Myers two months later with ongoing fatigue. She reported that Selegiline[2] made her edgy. Her medications were adjusted and a referral to psychiatry was discussed. Dr. Myers noted that she continued to be disabled and he was unsure if she will ever again be able to be fully gainfully employed due to her alleged fatigue and pain. (Tr. at 323.)

In November 2004, Ms. Frauendienst told Dr. Myers that she continued to struggle with the ability to function. She was tired for days if she exerted herself and she had general aches and pains. The examination showed mild diffuse aches upon palpation on her spine. Dr. Myers noted that she had an elevated Rhematoid factor and questions Raynaud's phenomenon. Her medications were continued and Viagra[3] was added to try to increase the warmth in her feet. He released her to work 4 hours per day, two days a week, not on consecutive days. (Tr. at 315, 321.) She returned one week later for increased fatigue. Dr. Myer noted that she appeared sore, uncomfortable and not doing well. The examination showed diffuse tenderness. He stated that she would be unable to work for an indefinite period due to chronic fatigue, fibromyalgia and inflammatory arthritis. He also noted that her sleep disorder prevents her from feeling rested. (Tr. at 312.)

---

[1]Lexapro is used to treat major depression and anxiety.

[2]Selegiline is a drug used to treat Parkinson's disease. It is prescribed for excessive sleepiness.

[3]Viagra can be used to increase blood flow to various parts of the body.

On November 9, 2004, Dr. McCormack, a state agency physician, stated that Ms. Frauendienst could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand/walk 2 hours and sit 6 hours in an 8 hour day, occasionally perform postural activities and was otherwise unlimited. (Tr. at 220-228.) He also stated that "[d]espite years of medical evaluation and treatment, a definite, unifying diagnosis has never been established as the explanation for her allegations of extreme fatigue." (Tr. at 228.)

On December 15, 2004, Ms. Frauendienst returned to Dr. Myers for a rash. She had stopped all medications to see if the rash would improve. She continued to have fatigue and difficulty doing activities. Dr. Myers gave her medications to control the itch and improve her sleep. (Tr. at 303.) Dr. Myers recommended that Ms. Frauendienst undergo a psychological evaluation with Dr. Steven Morgan. She described problems with memory dating and difficulties with attentional focus and organizational skills.

On December 15, 2004, Ms. Frauendienst also underwent a psychological evaluation with Dr. Steven Morgan. She told him about her memory problems and difficulties with her ability to focus and her organizational skills. (Tr. at 229.) She used Cylert, a medication to treat ADHD, on occasion when she needed to get a lot accomplished. She also took Depakote[4] for her moods and her sleep problems. Dr. Morgan's testing showed mildly abnormal results. (Tr. at 231.) Her memory was at the upper portion of average. She showed results consistent with ADD and mild weakness on activities such as high level planning, organization, problem solving and

---

[4]Depakote is used to treat seizures. It is also used to treat mania in people with bipolar disorder. Mania is defined as episodes of frenzied, abnormally excited mood. Bipolar Disorder is a manic-depressive disorder which causes episodes of depression, mania and other abnormal moods. It is also used to prevent migraine headaches.

4

verbal fluency. She had memory problems due to inattentiveness and errors made on word reading skills. (Tr. at 229-231.)

On January 31, 2005, Ms. Frauendienst underwent a psychological evaluation with Dr. Dennis Andersen at the request of the Social Security Administration. The doctor noted that she showed mild lability and a hysteroid quality in her presentation. She appeared to have little insight into her emotional functioning. (Tr. at 234-40.) The examiner felt that she may have inadvertently or deliberately omitted significant data in her history. She reported difficulty sleeping and lack of energy. She reported problems completing household activities and fatigue often. She also reported that she was able to bath and dress on a daily basis, would do housework in the morning on her good days and still did grocery shopping and paid the bills. The examiner noted that she showed no signs of depression except low energy. The examiner noted that she may self-medicate by drinking more than she admitted. He stated that an extended period of therapeutic involvement would be required to produce any noticeable change. He diagnosed her with anxiety disorder and significant hysteroid tendencies with possible alcohol abuse. He gave her a GAF of 60.[5] (Tr. at 234-40.)

In February 2005, Dr. Paule, a state agency physician, stated that she was limited to lifting 20 pounds occasionally, 10 pounds frequently, standing or sitting 6 hours each in an 8 hour day, and had no other limitations. (Tr. at 261-270.) He stated that "[i]t is difficult to sort out the emotional problems here from the physical problems. I cannot find clear evidence on a physical basis of chronic fatigue syndrome, although it is intermittently so addressed by Dr.

_____

[5]GAF, or Global Functioning of 51-60 is an area of moderate symptoms or moderate difficulty in social, occupational, or school functioning. The Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994).

Myers. I think that the woman has a great deal of symptomatology without a great deal of finding." (Tr. at 269.)

On April 13, 2005, Ms. Frauendienst informed Dr. Myers that her sister died suddenly and as a result she was drinking more, but not to the point of intoxication. She still reported muscle aches and pains and sleeping reasonably well, but not to excess. She was started on an anti-depressant. (Tr. at 299-300.)

On June 21, 2005, Ms. Frauendienst told Dr. Myers that she had more fatigue, but had reduced her drinking to once or twice per month. She did not indicate that things had improved. She indicated that she had shoulder pain and was less depressed. She was prescribed Cymbalta[6] for her mood. (Tr. at 297-298.)

On August 11, 2005, Ms. Frauendienst was seen by Dr. Ronald Messner for chronic fatigue. She felt tired all the time despite 12-14 hours of sleep a day, not including daytime naps. She had stopped working due to the stress of work and caring for her family. She had muscle and joint aches and swollen glands in her neck. Her primary problem was sleepiness. Cylert kept her awake but she was not able to take it without a break. She was diagnosed the chronic fatigue syndrome and mild rotator cuff tendonitis. Dr. Messner did not recommend any further treatment. (Tr. at 273-275.)

On August 20, 2005, Ms. Frauendienst told Dr. Myers that her symptoms were the same and she was better since she was not working.  He noted that she was more positive, upbeat, awake and alert than in the past. (Tr. at 292-293.)

On September 28, 2005, Ms. Frauendienst began psychological counseling. She reported difficulties with family issues, the death of her sister and her chronic illness. She tried

_____

[6]Cymbalta is an anti-depressant.

medication but then became anxious, depressed and suicidal after 2-3 days. She stayed home and slept as much as she could and did housework and cared for her son when she was able. She reported that after a busy day, she needed a few days to rest to get her energy level back to normal. She was unbalanced and her legs appeared to be stiff. She was sad and depressed with impaired memory and judgment. Her diagnoses were mood disorder, alcohol abuse, psychological factors affecting a medical condition and personality traits affecting a medical condition. She was given a GAF of 60. She was encouraged to start counseling, stop drinking and to schedule her activities to match her energy levels. (Tr. at 490- 495.) She attended counseling sessions through December 2005. (Tr. at 484-489.)

In December 2005, she began working part-time for a greeting card company. She was still working at the time of her hearing. (Tr. at 75-108.) Her earnings most months were under $300.00. (Tr. at 101.)

In April 2006, Ms. Frauendienst saw Dr. Myers for problems with urinary incontinence, back pain, joint stiffness, fibromyalgia and muscular weakness. She reported increased pain when doing activities. She reported that she was better, but had ongoing sleep problems and difficulty concentrating. (Tr. at 450-454.)

In addition to her primary doctor care, Ms. Frauendienst also received chiropractic care for pain in her lower back, neck and shoulder fatigue from 2003 to May 2006. She also received holistic chiropractic care for her fatigue. (Tr. at 441-446, 474-480.)

On August 16, 2005, Dr. Myers completed a Chronic Fatigue Syndrome Residual Functional Capacity Questionnaire. He noted that he has been treating Ms. Frauendienst every 1-3 months for over 5 years. She had joint pain and a sleep disorder and a poor prognosis. Her symptoms included self-reported impairment of her short-term memory, sore throat, muscle

7

pain, joint pain without swelling or redness and unrefreshing sleep. She had tried multiple medications and could not work long hours. (Tr. at 285-290.)

In October 2005, Dr. Myers completed a disability statement for Ms. Frauendienst's long term disability carrier. He noted that she could lift up to 20 pounds frequently, and 50 pounds occasionally, but her chronic fatigue was limiting her abilities. She needed to rest often. She could do 4-6 hours of sedentary work daily or 2-3 hours of light activity, or less than 1 hour of medium or heavy activity. Her ability to work was not consistent or predictable. (Tr. at 467-468.)

In July 2006, Dr. Myers completed a Mental Assessment of Ability to do Work form. He stated that Ms. Frauendienst's ability to maintain attention and concentration, perform complex job instructions and reliability was seriously limited. He felt her impairments would cause her to miss work more than 3 times per month. (Tr. at 446-448.)

3.    Medical Expert's Testimony

Dr. Andrew Steiner was the medical expert who testified at Ms. Frauendienst's hearing. He testified that her primary diagnosis is chronic fatigue syndrome. She has an elevated rheumatoid factor and sedimentation rate, joint pain, fragmented sleep, mood disorder, alcohol abuse, bipolar disorder, anxiety and depression. He testified that based on the absence of hard physical findings, she would be able to perform at least at a sedentary level. He further stated that people with chronic fatigue syndrome often have periods of time when they function better and periods when they are less functioning. (Tr. at 515-518.)

4.    Vocational Expert's Testimony

Norman Mastbaum testified as the vocational expert at the hearing. He testified that Ms. Frauendienst's past work history was as a waitress and a home health worker. He also stated that if a person was limited to sedentary work, they would not be able to return to this work. If a

8

person could do light work and follow some instructions, they could waitress. He expressed concern over an employer not being able to tolerate two or more missed days of work per month. He also stated that if a person needed more breaks than normally offered, they would not be able to sustain employment.

However, when the ALJ ask if a person with Ms. Frauendienst's limitations could perform any job that existed in the regional economy, Mr. Mastbaum replied that the person could perform 1800 jobs as an information clerk, as well as 1500 jobs as a clerical sorter.  (Tr. at 519-520.)

     5.   <u>Plaintiff's Testimony</u>

Ms. Frauendienst testified that she was working as a merchandiser ordering and filling greeting card displays. She picked her own hours and worked for about 2 hours per week. (Tr. at 502-504.) She was unable to work full-time due to her fatigue and needed medication when she worked in order to have the energy level needed. She also stated that eventually, the medications stopped working. (Tr. at 504.)

She testified that on a good day, she could walk ½ mile, but other days she could not do any walking. If she did walk a lot in one day, she would be in bed the next day. She testified that she could stand for ½ hour and sitting gave her back pain. She had problems with her legs and had 20 bad days per month. (Tr. at 505-506.) She further stated that on a bad day, she was unable to stand for any period of time and sitting was limited to ½ hour. (Tr. at 508-509.)

She stated that she spent most of her days in the recliner, with frequent naps. She did housework, laundry, paperwork, and paid bills on her better days and did nothing on her bad days. (Tr. at 506-507.) She would occasionally have days where she could perform up to six hours of activity, but those days only occurred once a month. (Tr. at 510-512.)

9

She further stated that she had problems with depression due to her tiredness and would cry a lot along with decreased motivation. (Tr. at 507-508.) This depression impacted her functioning 10 days per month. (Tr. at 512-513.) She stopped making social plans due to her inability to predict when she might have a bad day. (Tr. at 509-510.)

6.    The ALJ's Decision

In his evaluation of whether Ms. Frauendienst was entitled to a period of disability and disability insurance benefits under Sections 216(i) and 223(d) of the Social Security Act, the ALJ applied the five step sequential evaluation process required by 20 C.F.R. §404.1520(a).

The process begins with a determination of whether Ms. Frauendienst has engaged in substantial gainful activity, as defined in the Regulations, at any time since the alleged onset date of the disability. 20 C.F.R. §404.1520(b). Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. 404.1572(a). The ALJ determined that Ms. Frauendienst has not worked in substantial gainful activity since the alleged onset date of August 23, 2004. (Tr. at 16.)

The second step in the evaluation process required a determination as to whether Ms. Frauendienst is subject to any severe physical or mental impairment. 20 C.F.R. 404.1520(c). A severe impairment is defined as one that significantly limits the individual's physical or mental ability to meet the basic demands of work activity. 20 C.F.R. § 404.1520(c), § 404.1521, § 416.920(c) and § 416.921. The ALJ found that Ms. Frauendienst was severely impaired by obesity, myalgia and arthralgia, chronic fatigue syndrome, mood disorder and alcohol abuse. (Tr. at 16.) The ALJ stated that "this combination of physical and mental impairments does

significantly limit the claimant's ability to meet the basic demands of work activity, and, therefore, is severe within the meaning of the regulations." (Tr. at 16.)

The third step requires a comparison of Ms. Frauendienst's severe impairments with the impairments contained in Appendix 1 to Subpart P of the Regulations. 20 C.F.R. § 404.1520(d) and § 416.920(d). Appendix 1 contains a Listing of Impairments which describes the required level of severity for each condition. The ALJ found that based on the evidence and the testimony of Dr. Steiner, Ms. Frauendienst does not have an impairment or combination of impairments that meet or equals the relevant criteria of any listed impairment. (Tr. at 16.)  The ALJ stated that Ms. Frauendienst had the residual functional capacity to perform sedentary work, that precluded working at heights, or around hazards and never asked her to perform more than three or four-step tasks. (Tr. at 17.)  The ALJ thus concluded that Ms. Frauendienst has mild to moderate limitations in activities of daily living, social functioning, concentration, persistence and pace, and no episodes of decompensation. (Tr. at 17.) The ALJ thus concluded that the severity of the claimant's impairments does not meet or equal the criteria of any listed impairment.

The ALJ then proceeded to the next step to determine whether Ms. Frauendienst has the residual functional capacity to perform her past relevant work or any other work existing in significant numbers in the national economy. 20 C.F.R. 404.1520(e). In making the finding, the ALJ must consider all of the claimant's impairments. 20 C.F.R. 404.1520(e) and (f). The ALJ found that Ms. Frauendienst retains the RFC to perform "sedentary exertional work not requiring lifting and/or carrying weight of more than 10 pounds at a time, not working at heights or around hazards and no more than 3-4 step tasks." (Tr. at 17.)

The ALJ specifically found that Ms. Frauendienst claim that she is incapable of all work activity to not be credible. (Tr. at 19.) He found that her present part-time job shows the ability

of her to maintain work. (Tr. at 24.) He also stated that "the claimant's allegations of disabling pain and incapacitating limitations are not consistent with or supported by the objective medical record or records from treating and examining physicians." (Tr. at 19.)

The ALJ further considered the claimant's activities of daily living in assessing the credibility of her allegations that she is unable to perform any gainful activity. The ALJ noted that Ms. Frauendienst does engage in daily activities such as getting her kids ready for school, prepares food for the family, watches movies and other household tasks. (Tr. at 19.) She also does other family tasks such as going to her father's cabin and going to garage sales. (Tr. at 19.)

Thus, the ALJ concluded that the record supports the RFC.

The final step in the sequential evaluation involved a determination as to whether the claimant could return to any of her past relevant work or perform other work in the regional or national economy. This determination requires consideration of vocational factors.  The ALJ found that she could not perform any of her past jobs. (Tr. at 25.) However, it was found that the claimant could perform a number of sedentary jobs such as an information clerk and clerical sorter which are available in the Minnesota and national economy. (Tr. at 26.)

Based upon his analysis of the five-step process for determining if a claimant is disabled, the ALJ found that the Social Security Administration met its burden in this case to prove that a significant number of jobs exist in the national economy which Ms. Frauendienst could perform. The ALJ concluded that Ms. Frauendienst did not meet the statutory criteria for a finding of disability and that she was not entitled to a period of disability or disability insurance benefits.

### III.  STANDARD OF REVIEW

Section 205(g) of the Social Security Act (42 U.S.C. 405(g) authorizes judicial review of the Commissioner's final decision. When the Appeals Council denies the review, the ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. §416.1481. The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. 405(g). Thus, judicial review is limited to determining whether substantial evidence supported the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her decision. See, Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).

Substantial evidence is more than a "mere scintilla" of evidence but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court does not try cases de novo, resolve conflicts in the evidence or decide questions of credibility. See, Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). If substantial evidence supports the ALJ decision, it must be affirmed; the decision may not be reversed simply because substantial evidence might also support a different conclusion. See, Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). The ALJ's findings must be upheld if they are supported by substantial evidence in the record as a whole. Miller v. Sullivan, 953 F.2d 417, 420 (8th Cir. 1992); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991). The Court must do more than examine the record for that substantial evidence, if any. Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991). Judicial review of defendant's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole.  42 U.S.C.

§405(g); Morse v. Shalala, 32 F.3d 1228, 1229 (8th Cir. 1994).  Substantial evidence is enough

evidence that a reasonable person might accept as adequate to support a conclusion. Moad v.

Massanari, 260 F.3d 887, 890 (8th Cir. 2001).  Where such evidence exists, a court is required to

affirm defendant's factual findings. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

The analysis conducted by the court must include evidence in the record which detracts

from the weight of the evidence supporting the ALJ's decision. Burress v. Apfel, 141 F.3d 875,

878 (8th Cir. 1998).  Thus, the court must consider the weight of the evidence in the record and

apply a balancing test to evidence which is contrary.  Id.

The Court is required to review the administrative record as a whole and to consider:

1.    The credibility findings made by the ALJ;

2.    The education, background, work history, and age of the plaintiff;

3.    The medical evidence provided by treating and consulting physicians;

4.    The plaintiff's subjective complaints and descriptions of pain,

       impairment, and physical activity;

5.    Any corroboration of plaintiff's impairments by third parties; and

6.    The testimony of vocational experts based upon proper hypothetical questions

       setting forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183 (8th Cir. 1989) (*citing* Brand v. Secretary of HEW, 623 F.2d

523, 527 (8th Cir. 1980)).

However, in reviewing the record for substantial evidence, the Court may not substitute

its own judgment or findings of fact.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

## IV.  LEGAL FRAMEWORK

A claimant seeking disability insurance benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act. 20 C.F.R. §416.912(a); <u>Young v. Apfel</u>, 221 F.3d 1065; 1069 n.5 (8th Cir. 2000). In order to establish disability, a claimant must establish the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months.

The Social Security program provides benefits to people who are "aged, blind, or who suffer from a physical or mental disability." 42 U.S.C. § 1382(a); <u>Locher v. Sullivan</u>, 968 F.2d 725, 727 (8th Cir. 1992).  Disability means that the claimant is unable to work by reason of "medically determinable" physical or mental impairment or impairments.  42 U.S.C. §1382c(a)(3)(A).  The impairment must be so severe that the plaintiff not only cannot do the work he or she did before, but also cannot do any other kind of substantial gainful work.  42 U.S.C. §1382c(a)(3)(A).  The impairment must last for twelve months or be expected to result in death.  42 U.S.C. § 1382c(a)(3)(A). The Social Security Regulations require the Administrative Law Judge to apply a five-step sequential evaluation process in determining whether the claimant is disabled. 20 C.F.R. 404.1520. The steps, in order, are:

1.      Is the claimant working in substantial gainful employment? 20 C.F.R. § 404.1520 (b);

2.      Does the claimant have a medically determinable impairment or combination of impairments which is severe? 20 C.F.R. § 404,1520 (c).

3.      Does the severe impairment or combination of impairments meet or equal in severity the listing of impairments? 20 C.F.R § 404.1520 (d).

15

4.      Does the claimant have the capacity to do her past relevant work? 20

C.F.R. § 404.1520(e)

5.      If the claimant cannot perform past relevant work, does the claimant have

the capacity to do any other work existing in significant numbers in the

national economy on a sustained, competitive level?

20 C.F.R. §404.1520 (f)

If at any time in evaluating the claimants disability claim under the five-step process it is

determined the claimant is or is not disabled, the analysis is at an end. 20 C.F.R. § 404.1520 (a).

Plaintiff must then demonstrate that her impairments render her unable to engage in any

substantial gainful activity. 42 U.S.C. § 1382c(a)(3).

The claimant bears the burden of proving the existence and severity of any functional

limitations caused by her impairments, as well as the burden of proving that her impairment

precludes her from performing her past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146 n.5

(1987); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If she meets that burden, the

burden shifts to the Commissioner to establish other jobs that claimant can perform.

Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000).

## V.  CONCLUSIONS OF LAW

Ms. Frauendienst raises the following issues in her Motion: 1) whether the ALJ properly

determined her RFC; 2) whether the ALJ gave improper weight to the opinion of her treating

doctor and 3) whether the ALJ improperly found her to not be credible.

1.      The ALJ Correctly Assessed Ms. Frauendienst's Residual Functioning Capacity

A claimant's Residual Functional Capacity (RFC) is what he or she can do despite his or

her limitations.  20 C.F.R. § 404.1545(a)(1).  Further, a claimant's RFC is a medical question.

16

See Lauer v. Apfel, 245 F. 3d 700, 704 (8th Cir. 2001).  The ALJ must determine a claimant's

RFC by considering the combination of the claimant's mental and physical impairments.  See

Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  In determining a claimant's RFC,

the ALJ must consider all relevant evidence, including medical records, observations of treating

physicians and others, and claimant's own descriptions of his or her limitations.  Id.

        The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all

relevant evidence."  Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).  Nonetheless, the RFC

determination must be supported by "medical evidence that addresses claimant's 'ability to

function in the workplace.'"  Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003) (quoting

Nevland v. Apfel, 223 F.3d 853, 858 (8th Cir. 2000)).

        The ALJ here found that Ms. Frauendienst had the capacity to perform "sedentary

exertional work not requiring lifting and/or carrying weight of more than 10 pounds at a time,

not working at heights or around hazards, and no more than 3-4 step tasks." (Tr. at 17.)

Ms. Frauendienst claims that the RFC is not supported by the record. She relies upon Reddick v.

Chater, in which the ALJ found the chronic fatigue syndrome claimant not disabled based upon

two non-examining physician reports. 157 F.3d 715, 719-20 (9th Cir. 1998). However, here,

unlike in Reddick, the ALJ's decision is supported by substantially more evidence.  Here, the

ALJ relied on the testimony of the medical expert, the state agency psychologist and on the

reports from two examining consulting physicians. (Tr. at 22, 23.).  This testimony and these

reports fully support the ALJ's determination regarding Plaintiff's residual functional capacity.

The ALJ rejected Dr. Myers' restrictions in his hypothetical question to the vocational expert.

(Tr. at 21-22.) The ALJ stated:

> Dr. Myers' opinions and RFC assessments have been evaluated within the provisions of 20 C.F.R. §404.1527 and Social Security Ruling 96-5p. The undersigned declines to give significant weight to Dr. Myers' opinions and RFC assessments because they are conclusory and not fully substantiated by the objective findings, imaging studies and extensive and thorough workups.

(Tr. at 22.)

There was no need for the ALJ to accept Dr. Myers' restrictions when he determined Plaintiff's RFC to include in his hypothetical question. The ALJ's lack of confidence in those opinions is fully supported by the record. None of the other physicians who evaluated, consulted and treated Ms. Frauendienst has indicated that she was unable to sustain gainful employment as a result of her condition. In December 2004, Dr. Morgan stated that Ms. Frauendienst had very mild abnormal results with a weakness in aspects of higher level executive function. In January 2005, Mr. Anderson, a psychologist, saw no patterns of depression, and found that Plaintiff was intellectually functioning within the average to lower average range and her memory was intact. (Tr. at 22.) The ALJ correctly took all of the evidence into account including the other opinions issued by medical personnel and the objective evidence in the record and properly evaluated Ms. Frauendienst's RFC.

## 2. The ALJ Gave Proper Weight to the Opinion of the Treating Doctor

Plaintiff also contends that, in determining Ms. Frauendienst's RFC, the ALJ failed to give the appropriate weight to the opinions of Dr. Myers, Ms. Frauendienst's treating physician. Ms. Frauendienst argues that the ALJ relied too heavily on the medical testimony of Dr. Steiner, who testified as a medical expert, but who is not her treating physician, and who Plaintiff claims lacks sufficient knowledge of her impairments.

A treating physician's opinion is to be afforded "controlling weight" when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R.

§404.1527(d)(2).[7] <u>Leckenby v. Astrue</u>, 487 F.3d 626, 632 (8th Cir. 2007) *quoting* <u>Prosch v.
Apfel</u>, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Generally, the opinions of doctors who do not
examine the plaintiff do not ordinarily constitute substantial evidence to support a finding of
non-disability. <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000). The ALJ is required to
give more weight to the opinion of a treating source versus a non-treating source. <u>Singh v.
Apfel</u>, 222 F.3d 448, 452 (8th Cir. 2000). Even where a treating physician's opinion is not
afforded "controlling weight," "a treating physician's opinion should be accorded substantial
weight." <u>Prince v. Bowen</u>, 894 F.2d 283, 285 (8th Cir.1990).

The treating physician's continuing relationship with the claimant makes him or her
especially qualified to evaluate reports from examining doctors, to integrate the medical
information they provide, and to form an overall conclusion as to functional capacities and
limitations, as well as to prescribe or approve the overall course of treatment. <u>Lester v. Chater</u>,
81 F.3d 821, 833 (9th Cir. 1996); <u>see Hancock v. Secretary of the Dep't of HEW</u>, 603 F.2d 739,
740 (8th Cir. 1979)**.**

However, "[t]he conclusions of any medical expert may be rejected 'if inconsistent with
the medical record as a whole.'" <u>Davis v. Apfel</u>, 239 F.3d 962, 967 (8th Cir.2001). An ALJ
may "discount or even disregard the opinion of a treating physician where other medical
assessments are supported by better or more thorough medical evidence, or where a treating

---

[7] Under the regulations, a "treating source" is a physician, psychologist, or other acceptable
medical source who has an "ongoing treatment relationship" with the claimant, i.e., the claimant
has seen the physician "with a frequency consistent with accepted medical practice" for the
condition. <u>See</u> 20 C.F.R. § 404.1502.

physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir.2000).

In Hackner v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006), the court stated that the regulations specifically provide that the opinions of non-treating physicians may be considered. See also, 20 C.F.R. 404.1527(f). In Harris v. Barnhardt, 356 F.3d 926, 931 (8th Cir. 2004), the court stated that the ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of an impairment.

When an ALJ gives less than controlling weight to a treating physician's opinion, he "must always give good reason for the particular weight given to a treating physician's evaluation." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); 20 C.F.R. §404.1527; SSR 96-2p. Medical opinions are evaluated under the framework described in 20 C.F.R. §404.1527. If the ALJ finds the opinion is not controlling, he or she must evaluate the following factors to determine what weight to give the opinion: (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the quantity of evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the doctor is a specialist; and (6) other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(d). The ALJ in Ms. Frauendienst's case stated as follows:

> Dr. Myers's opinions and RFC assessments have been evaluated within the provisions of 20 C.F.R. §1527 and social security ruling 96-5p. The undersigned declines to give significant weight to Dr. Myers' opinions . . . because they are conclusory and not fully substantiated by the objective findings, imaging studies and extensive and thorough workups. As such, Dr. Myers' opinions . . . are based primarily on the claimant's self-reported symptoms, limitations and complaints rather than definitive clinical findings, laboratory results, diagnostic imagings, sleep studies, rheumatoid, neurological or neuropsychological testing and/or psychological/psychiatric evaluations. In addition, Dr. Myers' opinions . . . are inconsistent with the conservative course of treatment he has provided to the claimant, which consisted largely of various trials of medications, work

20

restrictions and limitations, and time off of work. It appears that Dr. Myers offered his opinions . . . to help the claimant obtain medical leave and to remain on medical leave, and later to obtain disability benefits through her insurance carriers, organizations that utilized a different set of rules and regulations for determining disability than those used by the Social Security Administration. The undersigned notes that Dr. Myers is a family practitioner rather than a specialist in the field of Neurology, Rheumatology, Sleep Medicine, Physical Medicine and Rehabilitation or Psychiatry/Psychology. Thus, his disability opinion . . . based on primary chronic fatigue syndrome, attention deficit disorder and mental health issues . . . are beyond his area of specialty. The undersigned further notes that despite the numerous referrals and work ups that the claimant had undergone, she has not had a work hardening or formal functional capacity assessment to determine her physical functioning. . .. Thus, the undersigned has given careful consideration to Dr. Myers' disability opinions . . . arriving at the residual functional capacity described above, but has not placed significant weight on them.

(Tr. at 21-22.)

The Court rejects Ms. Frauendienst argument that the ALJ has not fully analyzed

Dr. Myers' opinion. The ALJ found that Dr. Myers' opinions were conclusory, based on

self report and not fully substantiated by the objective findings.  The ALJ also suggested

that Dr. Myers gave his opinions based on sympathy to help Ms. Frauendienst obtain

benefits. (Tr. at 22.)

The ALJ accepted the opinions of non-treating, non-examining Dr. Steiner and the

state agency doctors. (Tr. at 23.) He stated:

At the hearing Dr. Steiner . . . Testified that although the record shows some abnormal laboratory findings such as an elevated sedimentation rate, and fragmented sleep and joint pain, there was no clear finding of fatigue, muscle aches or pain or fibromyalgia. Dr. Steiner stated that the claimant basically had no hard physical findings to support her symptoms or complaints. It was his opinion that the claimant was capable of sedentary work not requiring working at heights or around hazardous machinery. (Exhibits 4F, 6F-9F) The undersigned has placed significant weight on the above discussed opinions and assessments, in particular those of Dr. Steiner and the State Agency psychologists, because they are consistent with the overall evidence of record and has incorporated most of them into the residual functional capacity described above. Greater weight is given to Dr. Steiner's opinion because of the opportunity he had to review the current medical evidence, listen to the testimony at hearing and his specialization and familiarity with the Social Security

21

Administration's disability evaluation process. Greater weight is also given to the State Agency psychologists' determinations because of their knowledge and familiarity with 20 C.F.R. §404.1520a.

(Tr. at 23.)

Ms. Frauendienst argues that Dr. Steiner and other physicians did not contradict Dr. Myers' diagnosis, but offered only differing opinions on her limitations. Plaintiff further argues that the ALJ gave inadequate reasons, placing greater weight on the opinions of the state agency psychologists: they are more familiar with the Social Security Regulations. If that were true, the state agency would always trump the treating doctor.

In Vandenboom v. Barnhart, 421 F.3d 745 (8th Cir. 2005), the ALJ gave less weight to a physician's findings due to inconsistencies in the medical record as well as the physician's failure to document objective medical evidence to support the plaintiff's subjective complaints. Likewise, in this case the inconsistencies in the medical record, and a lack of objective medical evidence to support Ms. Frauendienst's subjective complaints, supports the ALJ's decision to discount Dr. Myers' opinion.

The ALJ took into account all the medical evidence when making his decision, and did not err in deciding not to give Dr. Myers' opinion greater weight. See 20 C.F.R. 404.1527(d)(3)-(4) (stating that the better supported and more consistent with the record an opinion is, the more weight assigned to that opinion). See Hackner v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (concluding that a treating physicians controlling weight must be supported by reviewing physicians' opinion despite treating physicians' opinion to the contrary where treating physicians' opinion was not supported by objective findings).

Plaintiff contends that the record contains the unsolicited opinion that "she will never be able to work again". (Plaintiff's memo at p.26, citing Tr. 312, 323.) Both of these notations were

22

made by Dr. Myers.  This opinion conflicts with all the other consulting and evaluating physicians of record. The ALJ relied on Dr. Morgan, the psychologist who tested Ms. Frauendienst in December 2004, and Dennis Andersen, a licensed psychologist who saw Plaintiff on February 4, 2005.  Dr. Morgan observed that Ms. Frauendienst actually scored well on the memory tests despite Ms. Frauendienst's allegations of long-term difficulties with her memory. (Tr. at 230.)    Mr. Andersen observed that Ms. Frauendienst showed "virtually no patterns of depression" except for her low energy. (Tr. at 238.)  In short, the ALJ had good reasons, and adequately explained them, for not giving the opinion of Dr. Myers controlling weight.

       3.   The ALJ Correctly Found Ms. Frauendienst's Subjective Complaints Not credible

      In assessing Ms. Frauendienst's RFC, the ALJ noted the lack of objective evidence supporting Ms. Frauendienst's subjective complaints. Ms. Frauendienst argues that because she suffers from pain that cannot be measured on an objective basis, and because the ALJ relied upon Dr. Steiner's opinion, he completely neglected his duty under Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[8]

---

[8] Polaski v. Heckler states as follows:

      The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

23

However, the record establishes that the ALJ did evaluate the entire record, including the claimant's testimony, in accordance with the provisions of <u>Polaski v. Heckler</u>.  (Tr. at 17.) (<u>Id.</u>) The ALJ specifically cited the <u>Polaski</u> decision and followed it and agency regulations in making his credibility findings. (Tr. at 17.) (<u>Id.</u>) In <u>McKinney v. Apfel</u>, the ALJ specifically cited the holding in <u>Polaski</u> while reaching the conclusion that McKinney's complaints were not credible. 228 F.3d 860, 864 (8th Cir. 2000). This is also true in this matter. The ALJ cited to the <u>Polaski</u> factors and took them into account when determining the credibility of Ms. Frauendienst. <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984). The ALJ did take into account all the factors in order to reach his decision. The fact that the ALJ relied on an opinion other than Dr. Myers does not render his decision incorrect nor does it show that the ALJ neglected his duty. The ALJ properly weighed Dr. Myers' opinion, Ms. Frauendienst's complaints of pain and other factors to reach his decision.

Ms. Frauendienst argues that ALJ Washington found that her subjective complaints were not credible but failed to provide proper analysis and did not address the corroborating statements of Mr. Frauendienst. (Tr. at 147-155). The ALJ stated as follows:

> A review of the evidence fails to document any impairment that could be expected to result in the severe, unremitting pain and symptoms alleged by the claimant. The absence of evidence of a significant nerve root impingement, ongoing neurological abnormalities or sustained difficulty with gross and fine manipulation, station, balance or gait is not consistent with the claimant's allegations of disabling levels of pain. The absence of evidence of marked and severe limitation in activities of daily living, social functioning and areas of concentration, persistence and pace does not support the claimant's assertions of disabling mental symptoms and incapacitating limitations.

---

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. [Emphasis in original.] <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).

(Tr. at 21.)

The ALJ also stated:

> The course of the medical treatment is also completely inconsistent with the claimant's subjective complaints. The evidence in this case shows that the claimant has been managed primarily on conservative modalities. . .. Claimant has not received or required any surgery, hospitalizations or otherwise invasive treatment measures of any of her allegedly disabling conditions or for the complications or exacerbations. She has not received or required ongoing psychiatric/psychological treatment or medication management, and has followed through with recommendations for a chemical dependency treatment program to assist with her alcohol abuse. Follow-up progress notes in mid-2005 by Dr. Myers showed that the claimant was participating in all of her son's activities, going to baseball games, etc. and doing more of the housework. She was less depressed because she was sleeping and resting more, and had activities to keep her busy. In August 2005, Dr. Myers reported that the claimant was more positive, upbeat, awake and alert than she had been for some time. (Exhibit 12). . . Thus, the undersigned finds that there is nothing associated with the course of the medical treatment which would preclude the performance of work within the residual functional capacity described above.

(Tr. at 23-25.)

In relation to her work history, the ALJ found that Ms. Frauendienst is capable of some work. The ALJ found that the claimant's work history "does not bolster her credibility with respect to her inability to return to any work at any exertional level." (Tr. at 23-25.)

The ALJ, given the record as a whole, examined Dr. Steiner's testimony, tests and her activities to determine that while she has limited ability, her allegations of total disability are unfounded. She reported significant memory problems to Dr. Morgan, yet her scores on the memory test were in the upper average range. (Tr. at 230.) Her activities with her family did increase over time, yet she told Dr. Myers that she had not really improved. (Tr. at 297.)

The ALJ properly assessed the evidence and the record as a whole. The ALJ's assessment of Ms. Frauendienst's credibility is supported by substantial evidence.

## VI.   RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's Motion for Summary Judgment be denied [Docket No. 9];

2.  Defendant's Motion for Summary Judgment [Docket No. 16] be granted**.**


Dated: July 3, 2008                    _s/ Franklin L. Noel_____
                                       FRANKLIN L. NOEL
                                       United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 23, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.