# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PAMELA J. FRAUENDIENST,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | Civil No. 07-3854 (JRT/FLN)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Fay E. Fishman, **PETERSON & FISHMAN**, 3009 Holmes Avenue South, Minneapolis, MN 55408, for plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

The Commissioner of Social Security denied plaintiff Pamela Frauendienst's application for disability benefits. After exhausting her administrative remedies, Frauendienst sought judicial review of the Commissioner's decision. This case is now before the Court on the parties' cross-motions for summary judgment. In a Report and Recommendation dated July 3, 2008, United States Magistrate Judge Franklin L. Noel recommended that this Court grant defendant's motion, deny Frauendienst's motion, and affirm the Commissioner's decision. Frauendienst filed objections to the Report and Recommendation, which the Court has reviewed *de novo* pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b). For the reasons given below, the Court overrules Frauendienst's objections and adopts the Report and Recommendation.

**BACKGROUND**

Frauendienst filed an application for disability insurance benefits on August 30, 2004, alleging a disability onset date of August 23, 2004. On August 24, 2004, Frauendienst saw her treating physician, Dr. Dean Myers, and complained of overwhelming fatigue. Frauendienst noted that she had a general lack of energy and that her medication[1] was interfering with her sleep. Dr. Myers was unsure of an exact diagnosis of Frauendienst's symptoms. He ordered lab tests and told Frauendienst to stay home from work for up to one month and to stop her current medication. Frauendienst returned to Dr. Myers two months later, again complaining of fatigue. Dr. Myers adjusted Frauendienst's medications and discussed a possible referral to a psychiatrist. Dr. Myers also noted that he was not sure whether Frauendienst would ever be able to work again because of her fatigue.

In November 2004, Frauendienst returned to Dr. Myers for treatment of her fatigue. She told Dr. Myers that she was tired for days if she exerted herself, and that she was experiencing muscle aches and pains. Dr. Myers's examination noted "mild diffuse aches," and he reported that Frauendienst would be able to work four hours a day for two days per week, not on consecutive days. (Tr. at 315, 321.) One week later, Frauendienst returned to Dr. Myers with complaints of increased fatigue. Dr. Myers's examination again revealed diffuse tenderness. He stated that Frauendienst would be unable to work

---

[1] Frauendienst was taking medication for depression and anxiety and for a thyroid condition.

for an indefinite period of time due to chronic fatigue, fibromyalgia, and inflammatory arthritis.

Frauendienst saw a state agency physician, Dr. McCormack, on November 9, 2004. Dr. McCormack stated that Frauendienst could occasionally lift ten pounds, frequently lift less than ten pounds, stand or walk for two hours and sit for six hours in an eight hour day. Dr. McCormack also noted that despite years of medical evaluation and treatment, there had been no "definite, unifying diagnosis" for Frauendienst's allegations of extreme fatigue. (Tr. at 228.)

Frauendienst returned to see Dr. Myers on December 15, 2004, for treatment of a rash. Dr. Myers gave Frauendienst medications for her rash and to improve sleep, and recommended that she undergo a psychological evaluation with Dr. Steven Morgan. Frauendienst saw Dr. Morgan that same day. Frauendienst told Dr. Morgan that she was having difficulties with her memory, ability to focus, and organizational skills. Dr. Morgan's testing showed mildly abnormal results, noting that Frauendienst's memory capabilities were quite strong, and that her results were consistent with Attention Deficit Disorder.

On January 31, 2005, at the request of the Social Security Administration, Frauendienst saw Dr. Anderson, a psychologist. Frauendienst told Dr. Anderson that her chronic fatigue resulted in problems with completing household activities, but that on good days she was able to maintain personal hygiene, go grocery shopping and pay the bills, and do housework. Dr. Andersen concluded that Frauendienst had no patterns of depression except low energy, that she may drink more than she acknowledges, and that

she "may have deliberately or inadvertently omitted significant data." (Tr. at 235.) Dr. Anderson diagnosed Frauendienst with anxiety disorder and significant hysteroid tendencies with possible alcohol abuse, and gave her a Global Assessment of Functioning (GAF) score of 60, indicating moderate difficulty with social or occupational functioning. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Ed. 1994).

In February 2005, Frauendienst saw Dr. Paule, a state agency physician. Dr. Paule stated that Frauendienst could lift twenty pounds occasionally, ten pounds frequently, sit or stand six hours in an eight hour day, and had no other limitations. Dr. Paule further stated that he could not find "clear evidence on a physical basis of chronic fatigue syndrome, although it is intermittently so addressed by Dr. Myers." (Tr. at 269.)

On August 11, 2005, Frauendienst saw Dr. Messner for chronic fatigue. Frauendienst had stopped working at this time. She told Dr. Messner that she felt tired constantly despite sleeping 12-14 hours per day. Frauendienst also reported muscle and joint aches and swollen glands in her neck. Dr. Messner diagnosed Frauendienst with chronic fatigue syndrome ("CFS"), as well as mild rotator cuff tendonitis. Dr. Messner did not recommend any further treatment.

On August 16, 2005, Dr. Myers completed a Chronic Fatigue Syndrome Residual Functional Capacity Questionnaire, noting that he had treated Frauendienst every one to three months for over five years. Dr. Myers stated that Frauendienst had CFS, as well as joint pain, a sleep disorder, and a poor prognosis, and that her symptoms included self-reported impairment of her short-term memory, muscle and joint pain, and poor sleep.

- 4 -

Dr. Myers also noted that Frauendienst cannot work long hours and that she is able to sit for no more than two hours continuously and stand for no more than thirty minutes continuously. On August 20, 2005, Frauendienst told Dr. Myers that she had been feeling better since stopping work, although many of her symptoms continued. Dr. Myers noted that Frauendienst was more positive, alert, and upbeat.

In October 2005, Dr. Myers completed a disability statement for Frauendienst's long-term disability carrier. Dr. Myers stated that, on a daily basis, Frauendienst could perform four to six hours of sedentary work, two to three hours of light activity, or less than one hour of medium or heavy activity. He also noted that Frauendienst's ability to work at any given time was unpredictable. In July 2006, Dr. Myers completed a Mental Assessment of Ability to Do Work form, stating that Frauendienst's ability to maintain attention or perform complex job instructions was seriously limited. Dr. Myers stated that he felt Frauendienst's impairments would cause her to miss work more than three times per month.

A hearing on Frauendienst's application for social security benefits was held before an administrative law judge ("ALJ") on November 22, 2006. Dr. Andrew Steiner, a neutral medical expert, testified that Frauendienst's primary diagnosis was chronic fatigue syndrome. He also testified that Frauendienst had an elevated rheumatoid factor and sedimentation rate and suffers from joint pain, fragmented sleep, mood disorder, alcohol abuse, bipolar disorder, anxiety, and depression. Based on his review of the medical records, Dr. Steiner opined that Frauendienst would be able to perform limited sedentary work. The ALJ also heard testimony from Mr. Norman Mastbaum, a

vocational expert. Mastbaum testified that a person with limitations similar to Frauendienst's could perform various sedentary jobs existing in the regional economy, including 1800 available jobs as an information clerk and 1500 jobs as a clerical sorter.

Frauendienst also testified at the hearing, stating that she was currently working for a greeting card company, was able to choose her own hours, and worked about two hours per week. Frauendienst testified that she was unable to work full-time because of her fatigue, and that she needed medication when she did work to sustain her energy level. She stated that on a bad day she could not stand for any period of time and could sit for only one-half hour. Frauendienst testified that she spent much of her day in a recliner taking frequent naps, but that on better days she was able to do housework, laundry, paperwork, and pay bills. Frauendienst also stated that, once a month, she could do up to six hours of activity, and that she participated in a "girls' night out" with friends one or two times per month.

Following the hearing, the ALJ applied the five-step analysis codified at 20 C.F.R. § 404.1520(a) to determine whether Frauendienst was eligible for disability benefits. The ALJ first determined that Frauendienst has not engaged in substantial gainful activity since the alleged onset of her disability on August 23, 2004. In steps two and three, the ALJ found that Frauendienst suffered from "severe" impairments – namely obesity, myalgia and arthralgia, chronic fatigue syndrome, mood disorder, and alcohol abuse – but that these impairments do not meet or equal the impairments listed in the relevant regulations. In step four, the ALJ determined that Frauendienst retained the residual functional capacity ("RFC") to perform "sedentary exertional work not requiring lifting

and/or carrying weight of more than ten pounds at a time, not working at heights or around hazards and no more than 3-4 step tasks." (Tr. at 17.)  Finally, in step five, the ALJ found that Frauendienst had a sufficient RFC to perform other jobs that exist in significant numbers in the national economy, including sedentary jobs such as an information clerk or a clerical sorter.  The ALJ therefore found that Frauendienst was not disabled and denied her application for disability insurance benefits.

Frauendienst sought judicial review of the Commissioner's decision in this Court pursuant to 42 U.S.C. § 405(g), and Frauendienst and the Commissioner filed cross-motions for summary judgment.  In support of her motion, Frauendienst argued (1) that the ALJ did not properly assess her RFC, (2) that the ALJ did not give sufficient weight to the opinion of her treating physician, Dr. Myers, and (3) that the ALJ improperly found her testimony to be not credible.  The Magistrate Judge conducted a thorough review of the testimony and medical evidence in the case, and ultimately determined that the ALJ's findings were supported by substantial evidence on the record.  The Magistrate Judge therefore recommended that this Court deny Frauendienst's motion for summary judgment and grant the Commissioner's motion for summary judgment.  Frauendienst then filed these objections, renewing the same three arguments raised in connection with her motion before the Magistrate Judge.

## ANALYSIS

When reviewing the Commissioner's decision, the Court neither reweighs the evidence nor reviews the factual record *de novo*.  *Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997).  Instead, the Court's review is limited to determining whether the

Commissioner's decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998). Substantial evidence exists if a reasonable mind would accept such evidence as adequate to support the Commissioner's conclusion. *Jackson v. Apfel*, 162 F.3d 533, 536 (8th Cir. 1998). When assessing the substantiality of the evidence, however, the Court must consider evidence that both supports and detracts from the Commissioner's decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). As long as there is substantial evidence in the record supporting the Commissioner's conclusion, the Court cannot reverse merely because it would have decided the case differently. *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000).

## I.   FRAUENDIENST'S RESIDUAL FUNCTIONAL CAPACITY

Frauendienst first argues that the ALJ's decision with respect to her RFC was not supported by substantial evidence on the record. The ALJ found that Frauendienst had the capacity to perform sedentary work not requiring lifting and/or carrying more than ten pounds, not working around hazards or at heights, and not requiring more than three to four step tasks. In arriving at this conclusion, the ALJ examined reports from Frauendienst's examining physicians and psychologists as well as the testimony of the neutral medical expert, Dr. Steiner. Specifically, the ALJ found that, other than Dr. Myers, none of the physicians who evaluated and treated Frauendienst indicated that she was permanently disabled or unable to sustain gainful employment as a result of her

conditions,[2] and none had restricted Frauendienst's daily activities on a consistent, long-term basis. (Tr. at 22.)

The ALJ noted that the medical reports of two psychologists showed that Frauendienst had "very mild" cognitive abnormality, "quite strong" memory capability, an average to low-average range of intellectual function, and was capable of maintaining her personal hygiene without difficulty. (*Id.*) The ALJ also noted that the state agency physicians and psychologists had determined that Frauendienst was capable of a full range of light exertional work involving limited instructions and superficial contact with coworkers and the public. Finally, the ALJ discussed the testimony of Dr. Steiner, who found that while there was some evidence of an elevated sedimentation rate and fragmented sleep, there was "no clear finding of fatigue, muscle aches or pain, or fibromyalgia," and thus no hard physical findings supporting Frauendienst's symptoms. (Tr. at 23.) In addition, the ALJ considered Dr. Steiner's opinion that Frauendienst was capable of limited sedentary work.

In sum, the Court finds this evidence adequate to support the ALJ's finding that Frauendienst is capable of limited sedentary work as described in the RFC. Accordingly, the Court agrees with the Magistrate Judge that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.

---

[2] As discussed below, the ALJ's decision to discount Dr. Myer's medical opinion was also supported by the record.

## II.     FRAUENDIENST'S TREATING PHYSICIAN

Frauendienst next argues that the ALJ improperly discounted the opinion of Dr. Myers, her treating physician. A treating physician's opinion should be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). The opinion of the treating physician, however, does not automatically control the determination of disability because the record must be evaluated as a whole. *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995). As such, the ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." *Prosch*, 201 F.3d at 1013 (internal quotations omitted). The ALJ must "always give good reasons for the particular weight given to a treating physician's evaluation." *Id.*; 20 C.F.R. § 404.1527(d) (identifying factors the ALJ must consider in determining what weight to give the treating physician's opinion).

The Magistrate Judge determined that the ALJ's decision to discount the opinion of Dr. Myers, and to give more weight to the opinions of non-treating physicians and psychologists, was supported by inconsistencies in Frauendienst's medical records and by a lack of objective medical evidence to support Frauendienst's subjective complaints. The Court agrees with that analysis. The ALJ noted in his written decision that Dr. Myers' opinions were not substantiated by objective findings; that his opinions were based primarily on Frauendienst's self-reported symptoms rather than definitive clinical

findings, laboratory results, or psychological testing or evaluations; that Dr. Myers' conservative course of treatment, including various trials of medications and general work restrictions, were inconsistent with a finding of total disability; and that Dr. Myers was a family practitioner, and not a specialist in fields such as neurology, rheumatology, or psychiatry or psychology. The ALJ further considered that all of the other physicians and psychologists, including Dr. Steiner, found that Frauendienst was neither permanently disabled nor unable to sustain gainful employment as a result of her symptoms, and that these opinions were consistent with the general lack of objective physical findings in the record supporting Frauendienst's symptoms.

Frauendienst argues in her objections that she made "repeated complaints" of fatigue throughout her alleged period of disability, and that these complaints undermine the ALJ's conclusion that there was no clear finding in the record of fatigue, muscle aches or pain, or fibromyalgia. However, as noted below, the ALJ had sufficient reason to discount such findings to the extent they were based solely on Frauendienst's self-reported complaints.

Frauendienst also contends that the lack of objective findings is "the hallmark" of a CFS case, and therefore cannot serve to undermine Dr. Myers's opinion that Frauendienst was totally disabled. The Court agrees that the absence of objective findings *alone* would not suffice to discount Dr. Myers's medical opinion where the alleged fatigue symptoms necessarily defy objective measurement. *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (finding that because CFS may lack objective findings, "the failure of some doctors to state conclusive diagnoses does not constitute substantial

evidence to support a finding that claimant did not suffer from the syndrome"). However, the ALJ found various inconsistencies in the medical records that undermined the credibility of Frauendienst's self-reported symptoms, including reports of Dr. Morgan and Dr. Andersen showing cognitive functioning generally at odds with Frauendienst's own description of her symptoms. To the extent Dr. Myers's medical opinion was based on Frauendienst's self-reporting, the ALJ had a sufficient basis upon which to discount his opinion. Moreover, the absence of specific findings demonstrating the severity of Frauendienst's CFS was considered alongside *contrary* evidence of Frauendienst's RFC, including Dr. Myers's conservative course of treatment over the duration of the disability, Frauendienst's demonstrated ability to continue working after the alleged onset date, and her ability to maintain daily living activities and limited social functioning. As such, the Court is not persuaded that the ALJ's decision to discount the opinion of Dr. Myers was based merely on the lack of objective findings of Frauendienst's CFS.

Viewing this evidence as a whole, the Court concludes that the ALJ's decision to give less weight to the medical opinion of Dr. Myers was consistent with 20 C.F.R. § 404.1527(d) and was supported by other medical evidence in the record.

### III.   FRAUENDIENST'S CREDIBILITY

Finally, Frauendienst argues that the ALJ's determination that her subjective allegations of pain and limitations were not credible is not supported by the record and relies too heavily on the absence of objective findings of CFS. When determining the credibility of a claimant's subjective allegations, the ALJ must consider evidence such as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain;

(3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "An ALJ may discredit subjective complaints of pain only if they are inconsistent with the record as a whole." *Brown v. Sullivan*, 902 F.2d 1292, 1294 (8th Cir. 1990). In addition, the ALJ must detail his reasons for discrediting the testimony. *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

The Magistrate Judge determined that the ALJ evaluated the entire record in accordance with *Polaski*, and that his decision to discredit Frauendienst's subjective allegations was supported by substantial evidence on the record. The Court agrees. The ALJ found that Frauendienst's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 19.) In arriving at that conclusion, the ALJ specifically cited and applied the various factors under *Polaski*. The ALJ noted that there was a lack of evidence supporting Frauendienst's allegations of "disabling levels of pain," and no evidence of "marked and severe limitations" in Frauendienst's daily living activities, social functioning, or concentration. (Tr. at 21.) The ALJ found that the course of Frauendienst's medical treatment was inconsistent with her subjective allegations, noting that Frauendienst's report of significant memory problems was inconsistent with

Dr. Morgan's test results; that Frauendienst had been managed "primarily on conservative modalities"; and that the inconsistency and general decline in Frauendienst's need for prescriptive medication to control pain was inconsistent with her allegations of total disability and incapacitation. (Tr. at 23.) Finally, the ALJ carefully examined Frauendienst's daily activities and work history since the alleged onset of her disability, concluding that her ability to continue working in a limited capacity, to perform daily housework and caretaking functions, and to engage in social activities was not consistent with incapacitating limitations.

In sum, the ALJ examined and applied the various *Polaski* factors and fully explained his decision to discredit Frauendienst's testimony. The Court "will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain." *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). As demonstrated above, in deciding to discount Frauendienst's testimony, the ALJ relied on much more than the absence of objective findings supporting symptoms of CFS. Thus, while there may have been evidence that supported Frauendienst's subjective complaints, the Court finds sufficient evidence on the record as a whole supporting the ALJ's assessment of Frauendienst's allegations.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** Frauendienst's objections [Docket No. 22] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 21]. **IT IS HEREBY ORDERED** that:

1. Frauendienst's Motion for Summary Judgment [Docket No. 9] is **DENIED**.

2. The Commissioner's Motion for Summary Judgment [Docket No. 16] is **GRANTED**. Frauendienst's complaint is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: September 30, 2008        ___s/ John R. Tunheim_____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                     United States District Judge